[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11056

_____

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY,

Plaintiffs-Counter Defendants-Appellants,

*versus*

GLASSCO INC.,

Defendant-Counter Claimant-Appellee,

JASON WILEMON,
JOHN BAILEY,
ANDREW VICTOR,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-01950-KKM-JSS

_____

Before JORDAN, ROSENBAUM, and HULL, Circuit Judges.

HULL, Circuit Judge:

This appeal turns on the interpretation of Florida's Motor Vehicle Repair Act ("Repair Act"). The questions presented are sufficiently unsettled, important, and likely to recur that we believe the best course is to certify them to the Supreme Court of Florida, the final arbiter of Florida law. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (noting the United States Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law"); *In re Cassell*, 688 F.3d 1291, 1292 (11th Cir. 2012) (stating the final arbiter of state law is the state supreme court).

## I.    BACKGROUND

### A.    The Parties

The plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, and GEICO General Insurance Company (collectively "plaintiff GEICO" or "GEICO") sell automobile insurance policies with comprehensive coverage (the

"policy"). The defendant Glassco Inc. ("Glassco") is a windshield repair shop in Florida, and defendants Jason Wilemon, John Bailey, and Andrew Victor are the owners of Glassco (collectively the "Glassco owners").

Plaintiff GEICO sued defendants, alleging eight causes of action, all premised on defendants' purported violations of the Repair Act. The district court dismissed Count 8 and granted summary judgment in favor of the defendants on the remaining counts. Plaintiff GEICO appeals. We set forth the facts, the procedural history, the Repair Act, and the certified questions.

## B.    Facts

Beginning in 2016, Glassco provided windshield repairs to Florida individuals insured by GEICO. Glassco gave a written work order to the insureds, which they signed. Glassco's work order stated the repairs are at "no cost" to the insured. Under Florida law, an insurer, like GEICO, is not allowed to charge its insureds a deductible for windshield repairs. Fla. Stat. § 627.7288.

In the work order, the insureds assigned to Glassco all rights to insurance payments for windshield repair and/or replacement (collectively "repairs"). The insureds' assignment expressly assigned Glassco the right to make a demand for payment for the repairs and to receive "direct payment" from GEICO.

Notably, the assignment also stated, "I hereby authorize the above repairs, *including sublet work*, along with the necessary materials. Glassco Inc. *and its contractors* may operate my vehicle for the purpose of inspection and delivery at my risk." (emphasis

added).  GEICO's policy granted its insureds the sole discretion to select a repair shop to repair a windshield.  Glassco ran its business almost entirely through independent contractors.

Pursuant to the assignment, Glassco made repairs and submitted its invoice for reimbursement to GEICO.  GEICO's policy provided that GEICO would reimburse the repair shop for windshield repairs at the "prevailing competitive price" for a "competent and conveniently located" repair shop.  GEICO relied, in part, on the National Auto Glass Specifications ("NAGS") to determine the "prevailing competitive price."  In early 2012, GEICO circulated a letter to repair shops, stating that it would only reimburse a deeply discounted amount of NAGS's pricing standards.

Between 2016 and 2019, 1,773 of GEICO's insureds selected Glassco to repair their windshields.  Glassco completed the repair work, and this appeal involves no customer complaints.  Yet, for nearly all of these 1,773 claims, GEICO did not pay Glassco's full invoiced price but instead made only deeply discounted payments to Glassco.

In response, Glassco filed small claims actions in Florida state court to collect the difference between its invoiced prices and the discounted amounts GEICO paid.  In state small claims court, 11 of the 1,773 cases were consolidated, tried, and resulted in a final judgment for Glassco's invoiced prices against GEICO.  *Glassco, Inc., a.a.o. J. Bazan et al. v. GEICO Gen. Ins. Co.*, 16-CC-026608, 16-CC-031286, 16-CC-029315, 16-CC-029301, 16-CC-034756, 16-CC-

036273, 16-CC-037057, 16-CC-037082, 16-CC-037125, 16-CC-039072, 17-CC-000870 (Fla. Hillsborough Cnty. Ct. Small Cl. Div. Aug. 20, 2020). The state small claims court determined that "the 'prevailing competitive price' is more than the [discounted] amount GEICO paid" and that Glassco's "invoiced amount did not exceed the 'prevailing competitive price.'" *Id.* In so ruling, the state small claims court followed the holding in *Government Employees Insurance Co. v. Superior Auto Glass of Tampa Bay, Inc.*, 26 Fla. L. Weekly Supp. 876a (Fla. Cir. Ct. App. Div. Mar. 27, 2018). The Florida appellate court affirmed those 11 judgments in a summary order. *See GEICO Gen. Ins. Co. v. Glassco, Inc.*, 343 So. 3d 565 (Fla. Dist. Ct. App. 2022). GEICO settled an additional 53 cases. It appears Glassco's other 1,709 cases remain pending in state court.

## C.   Procedural History

While these state court actions were pending, GEICO brought suit offensively against defendants in federal court. GEICO's complaint alleged that defendants violated the Repair Act in five ways, and therefore defendants were not entitled to any payment at all for any completed windshield repairs. GEICO seeks to recover over $700,000 that it paid to Glassco from 2016 onward.[1]

GEICO's alleged five Repair Act violations are: (1) Glassco subcontracted the repair work without its insured customers' knowledge or consent; and although customers signed Glassco's

---

[1] The vast majority of this $700,000 represents the 1,700+ claims that GEICO paid at discounted amounts below Glassco's invoiced price.

work orders for repairs at "no cost" to them, Glassco failed to give them the required (2) written notice of the option to obtain a written estimate; (3) written repair estimates; (4) invoices upon the completion of repairs; and (5) odometer readings on work orders and invoices.

GEICO's original complaint asserted eight causes of action based on (1) a Repair Act theory alone or (2) both a Repair Act theory and a fraud theory. Underlying all of GEICO's claims is the contention that (1) Glassco did not comply with the Repair Act, (2) Glassco is not entitled to any reimbursements at all, and (3) all of Glassco's claims presented to GEICO were thus fraudulent and unlawful.

Count 1 seeks a declaratory judgment that Glassco has no right to receive any payment by virtue of its Repair Act violations. Count 2 is a federal RICO claim, and Count 3 is a federal RICO conspiracy claim, both against the Glassco owners. Count 4 is a Florida Deceptive and Unfair Trade Practices Act claim against all defendants. Count 5 is a Florida RICO claim against the Glassco owners. Count 6 is a common law fraud claim and Count 7 is an unjust enrichment claim, both against all defendants. Count 8 is a Repair Act statutory claim against all defendants brought under Fla. Stat. § 559.921(1).

Defendants each filed a motion to dismiss GEICO's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted defendants' motions as to GEICO's statutory Repair Act claim (Count 8) on the basis that

(1) the Repair Act grants a private right of action to only "customers," (2) GEICO is not a "customer" as defined by the Repair Act, and (3) the Repair Act thus does not grant GEICO a statutory cause of action. The district court denied defendants' motions on Counts 1 through 7.

After discovery, all parties moved for summary judgment. The district court denied plaintiff GEICO's motion and granted in part and denied in part defendants' motions. Even assuming Glassco violated the Repair Act, the district court concluded that Glassco's violations (1) were at most technical violations of the Repair Act and (2) did not render Glassco's claims non-compensable vis-à-vis GEICO. Therefore, Glassco's reimbursement claims submitted to GEICO were not fraudulent or unlawful.

The district court granted judgment to the defendants on (1) Count 1, the declaratory judgment claim, and (2) Counts 2, 3, and 5, the RICO claims based on Repair Act violations and fraud, for lack of scienter and continuity required under state and federal RICO laws. As to Counts 4, 6, and 7, the district court granted judgment for all defendants to the extent those counts were based on Repair Act violations, but permitted them to continue based on GEICO's traditional fraud allegations.

GEICO filed a motion for reconsideration or, in the alternative, for certification for interlocutory review pursuant to 28 U.S.C. § 1292(b). The court denied GEICO's motion.

To appeal immediately, GEICO filed a motion to amend its

complaint to remove its surviving fraud theory claims.  The district court granted GEICO's motion and entered judgment for all defendants on all counts.  GEICO appealed.

### D.    GEICO's Two Appeals

In GEICO's first appeal, this Court held that although GEICO attempted to amend its complaint to remove the fraud theory claims, GEICO did not sufficiently remove them, and there was no final decision.  *Gov't Emps. Ins. Co. v. Glassco, Inc.*, 58 F.4th 1338 (11th Cir. 2023).  We dismissed the appeal for lack of appellate jurisdiction.  *Id.* at 1346.

On remand, GEICO again sought leave to amend its complaint to drop further the fraud theory.  The district court granted GEICO's unopposed motion, and this second appeal ensued.  The operative complaint contains only claims premised on GEICO's theory that Glassco (1) violated the Repair Act in five ways, (2) was not entitled to any payment for any repairs, and (3) thus owes approximately $700,000 back to GEICO.

In this second appeal, GEICO conceded that if a court determines that the alleged Repair Act violations do not void the repair invoice and preclude Glassco from receiving any payment, all eight counts in the operative complaint fail.  The issues now involve only the effect, if any, of Glassco's five alleged violations of the Repair Act and whether GEICO can sue for them.

## II.    STANDARD OF REVIEW

We review *de novo* a dismissal under Rule 12(b)(6) for failure

to state a claim. *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017). We review *de novo* a district court's summary judgment order, drawing all inferences in the light most favorable to the non-moving party. *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

We review a district court's interpretation of state law *de novo*. *Fla. VirtualSchool v. K12, Inc.*, 735 F.3d 1271, 1273 (11th Cir. 2013). In this diversity case, we must apply Florida law and decide issues of state law "the way it appears the state's highest court would." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1290 (11th Cir. 2001) (quotation marks omitted).

## III.    THE REPAIR ACT

We start by reviewing Florida's Repair Act.

### A.    Five Alleged Statutory Violations

First, GEICO asserts that Glassco subcontracted the repair work without its customers' "knowledge or consent," in violation of § 559.920(14), which provides:

> It is a violation of this act for any motor vehicle repair shop or employee thereof to . . . [h]ave repair work subcontracted without the knowledge or consent of the customer unless the motor vehicle repair shop or employee thereof demonstrates that the customer could not reasonably have been notified.

Fla. Stat. § 559.920(14).

Second, GEICO contends Glassco failed to give its customers "written notice" about the customers' option to request

or not request a written estimate, in violation of § 559.905(2), which requires a notice with the following statement, in capital letters of at least 12-point type:

> Please read carefully, check one of the statements below, and sign:
>
> I understand that, under state law, I am entitled to a written estimate if my final bill will exceed $100.
>
> _____ I request a written estimate.
>
> _____ I do not request a written estimate as long as the repair costs do not exceed $____. The shop may not exceed this amount without my written or oral approval.
>
> _____ I do not request a written estimate.
>
> Signed _____ Date _____

Fla. Stat. § 559.905(2) (font altered).

Third, GEICO asserts Glassco failed to provide its customers a "written repair estimate" before doing the windshield repairs, in violation of § 559.905(1), which provides:

> When any customer requests a motor vehicle repair shop to perform repair work on a motor vehicle, the cost of which repair work will exceed $100 to the customer, the shop shall prepare a written repair estimate, which is a form setting forth the estimated cost of repair work, including diagnostic work, before effecting any diagnostic work or repair.

Fla. Stat. § 559.905(1). This section requires 14 items to be included in a "written repair estimate." Fla. Stat. § 559.905(1)(a)–(n).

Fourth, GEICO contends Glassco failed to provide its customers an invoice upon the completion of repairs, in violation of § 559.911, which states: "The motor vehicle repair shop shall provide each customer, upon completion of any repair, with a legible copy of an invoice for such repair. The invoice may be provided on the same form as the written repair estimate . . . ." Fla. Stat. § 559.911. This section requires six items to be included in the invoice. Fla. Stat. § 559.911(1)–(6).

Fifth, GEICO contends Glassco failed to include the vehicle's odometer reading on work orders and invoices, in violation of § 559.911(1) and § 559.920(11). Section 559.911(1) provides that invoices must include "[t]he current date and odometer reading of the motor vehicle." Fla. Stat. § 559.911(1). Section 559.920(11) provides:

> It is a violation of this act for any motor vehicle repair shop or employee thereof to . . . [c]ause or allow a customer to sign any work order that does not state . . . the automobile's odometer reading at the time of repair.

Fla. Stat. § 559.920(11).

In response, defendants dispute the alleged Repair Act violations. Defendants contend that Glassco's customers consented to subcontract work because they signed a work order authorizing "sublet work" and Glassco's "contractors" to operate the vehicle. Further, customers have the option not to request a written estimate. Defendants argue that no written estimate is

required when a repair shop does not charge anything to the customer. *Allstate v. Auto Glass Am., LLC*, 418 F. Supp. 3d 1009, 1024–25 (M.D. Fla. 2019). Defendants also argue that Glassco's work orders are effectively a "zero to the customer" estimate that every customer signed. There is no evidence that Glassco's customers did not understand or accept the estimate of "no cost" on Glassco's work orders. Because Glassco's work orders were at "no cost" to its customers, defendants contend Glassco properly submitted its invoices to GEICO who paid them, albeit at a deeply discounted price.

Defendants also point out the Repair Act provides that even if such violations occur, the repair shop can still recover a "reasonable value of such repairs," as follows:

> If, in any proceeding brought pursuant to this part, it is determined that the repairs and costs thereof were in fact authorized, orally or in writing, the repairs were completed in a proper manner, and the consumer benefited therefrom, then the enforcing authority may consider such factors in assessing penalties or damages and may award the reasonable value of such repairs.

Fla. Stat. § 559.921(7).

For purposes of the summary judgment motions, the district court assumed that Glassco violated the Repair Act in the five alleged ways and held those violations did not void the repair invoices and did not preclude payment to Glassco. So, for purposes of this appeal and certification, we assume that GEICO's alleged

Repair Act violations occurred.

### B.    Remedies Section of the Repair Act

For violations, the remedies section of the Repair Act creates a private right of action for "[a]ny customer," stating:

> Any customer injured by a violation of this part may bring an action in the appropriate court for relief. . . . The customer may also bring an action for injunctive relief in the circuit court.

Fla. Stat. § 559.921(1).  The Repair Act defines a "customer" as:

> [T]he person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on the written repair estimate as a person who may authorize repair work.

Fla. Stat. § 559.903(2).  GEICO admits it did not request the repair work and did not sign a work order or a repair estimate.

We now turn to GEICO's operative complaint.

### IV.    COUNT 8: REPAIR ACT'S CAUSE OF ACTION

### A.    District Court's Dismissal of Count 8

In dismissing Count 8, the district court concluded that (1) only a "customer" may bring a private action under § 559.921(1) of the Repair Act, but (2) GEICO is not a "customer" as defined by § 559.903(2) of the Repair Act as (a) "the person who signs the written repair estimate" or (b) the person designated "as a person who may authorize repair work."  *See* Fla. Stat. §§ 559.903(2),

559.921(1); *see also Allstate*, 418 F. Supp. 3d at 1025 (concluding that an insurance company alleging fraudulent windshield repair practices was not a customer under the text of the Repair Act).

The district court recognized that the Repair Act is "remedial" and warrants a statutory construction that gives its terms the most extensive and broadest meaning to which they are reasonably susceptible. But the district court noted that the written estimate is provided "[w]hen any customer requests a motor vehicle repair shop to perform repair work on a motor vehicle." Fla. Stat. § 559.905(1). The district court reasoned that when no written estimate is provided or signed, the only reasonable interpretation of "customer" is the person who requested or authorized the repair shop to perform the windshield repair work.

Since GEICO was not a person who requested or authorized Glassco to repair the vehicles, the district court concluded that "no reasonable construction permits GEICO—an insurer—to sue as a 'customer' under the Repair Act." At bottom, the district court determined the § 559.921(1) cause of action, read with the § 559.903(2) customer definition and the § 559.905(1) written estimate requirement, did not grant GEICO a private cause of action and, thus, dismissed Count 8 for failure to state a claim.

The district court also stressed that GEICO is not without a remedy. Under § 559.921(2) of the Repair Act, GEICO can complain to the Florida Department of Agricultural & Consumer Services ("FDACS") about the defendants' non-compliance with the Repair Act, and § 559.921(4) grants FDACS the power to

impose a civil penalty, including a fine, an injunction against specified activity, and a revocation of the repair shop's registration. *See* Fla. Stat. §§ 559.903(3), 559.921(2), 559.921(4). The district court found that the existence of "an administrative remedy further confirms that the Repair Act restricts the private right of action to the customer only."

### B.    GEICO's Contentions Regarding Count 8

GEICO argues the district court erred in dismissing Count 8. On appeal, GEICO concedes that it is not a "customer" under the Repair Act's definition, but nonetheless asserts that it is entitled to bring a statutory private cause of action under § 559.921(1) of the Repair Act.[2] GEICO contends that the Repair Act, as a remedial statute, is entitled to a liberal construction in order to advance the remedy provided where it is consistent with the legislative purpose. *See Raymar Constr. Co., Inc. v. Lopez-Soto*, 547 So. 2d 282, 284 (Fla. Dist. Ct. App. 1989). GEICO emphasizes that the purpose of the Repair Act was "to protect consumers against misunderstandings arising from oral estimates of motor vehicle repairs and the legal disputes and litigation that result from the 'fait accompli' nature of claims for repair work already done." *Citron v. HGC Auto Collision, Inc.*, 342 So. 3d 795, 798 (Fla. Dist. Ct. App. 2022) (quotation marks omitted).

---

[2] GEICO does not argue that the law of subrogation permits it to assert the insured's private right of action under the Repair Act. At oral argument, GEICO also acknowledged that it does not have any assignment of any customer's potential claim under the Repair Act.

GEICO also argues that a strict application of § 559.903(2)'s definition of "customer" creates a hole in the Repair Act. Because defendants never provided anyone with the requisite written estimate, no one was able to sign an estimate, and therefore no one could ever bring a private action against defendants under Fla. Stat. § 559.921(1). GEICO contends that the district court's narrow construction of "customer" insulates repair shops from liability for their own Repair Act violations. GEICO argues that under the circumstances here—where no one met the strict statutory definition of a "customer"—the district court construed the Repair Act in a way that undermines its remedial purpose.

GEICO also relies on the decision in *1616 Sunrise Motors, Inc. v. A-Leet Leasing of Florida*, 547 So. 2d 267 (Fla. Dist. Ct. App. 1989). *Sunrise* involved a § 559.919 lien under the Repair Act. At the time, § 559.919 provided that a repair shop may not "refuse to return a customer's motor vehicle by virtue of any miscellaneous lien, nor may it enforce such a lien in any other fashion if it has failed to substantially comply with the provisions of this part." Fla. Stat. § 559.919 (1980). In *Sunrise*, A-Leet owned the car but leased it; after an accident, Sunrise repaired the car, but the lessee failed to pay for the repairs. *Sunrise*, 547 So. 2d at 268. After Sunrise filed a lien, A-Leet, the owner-lessor, filed a bond to release the car, and Sunrise tried to collect on A-Leet's bond for the repairs. *Id.*

Because Sunrise had not received written or oral authorization to do the repairs, the Florida court concluded Sunrise could not recover on its claim against A-Leet's bond—even though

A-Leet "may not be a 'customer' within the definition portion of the Act." *Id.* The Florida court determined that allowing Sunrise, an errant repair shop, to recover would undermine the purposes of the Act. *Id.* Based on *Sunrise*'s expansive interpretation of the Repair Act, GEICO argues "[a]ny customer" in the remedies provision should also be construed broadly to include GEICO, even though GEICO was not a customer, because otherwise Glassco avoids the Repair Act's requirements.[3]

## C. Defendants' Contentions Regarding Count 8

Defendants respond that the district court correctly dismissed Count 8. Defendants submit that GEICO ignores the plain language of the Repair Act, which grants a private right of action to only *customers*, and GEICO concedes that it is not a customer. Defendants point to *Allstate*, where a federal district court, like here, concluded that the insurer failed to meet the statutory definition of a "customer" and was not covered by the Repair Act. 418 F. Supp. 3d at 1025. Defendants also argue that Florida courts begin and end statutory construction with the plain language of the statute, and we should too in this diversity case. *In re A.W.*, 816 So. 2d 1261, 1263–64 (Fla. Dist. Ct. App. 2002).

Defendants further contend that the Repair Act does not provide recovery, restitution, or money back when GEICO

---

[3] At the time of *Sunrise*, "customer" was defined, under an older version of the Repair Act, as "someone who uses an automobile for personal use, or in connection with a business owning or operating fewer than five vehicles." *Sunrise*, 547 So. 2d at 268.

directly pays its insured's assigned benefits to a non-compliant repair shop. As to this point, defendants argue that the Repair Act does not contain a voiding penalty that disentitles Glassco from recovering any compensation for services actually performed, even if Glassco violated the Repair Act. Instead, the Act expressly contemplates that a non-compliant repair shop may still be awarded the reasonable value of its services.

Defendants also emphasize that GEICO's reliance on *Sunrise* is misplaced. First, defendants argue that *Sunrise*, like GEICO's other cited Florida decisions about liens, is inapposite because this case does not involve (1) the enforcement of a possessory lien, (2) a claim where Glassco, a repair shop, retained possession of a customer's vehicle due to an unpaid repair invoice, or (3) a claim in which Glassco is attempting to enforce a Chapter 713 lien. *See State Farm Mut. Auto. Ins. Co. v. At Home Auto Glass, LLC*, 2021 WL 6118102, at *5 n.4 (M.D. Fla. Dec. 27, 2021) (finding that because defendant was not attempting to enforce a lien, *Sunrise* "is therefore of no help to [plaintiff]").

Second, defendants stress that (1) *Sunrise* predates the 1993 amendment to the Repair Act that added § 559.921(7), which allows non-compliant repair shops to recover the reasonable value of their services; and (2) *Sunrise* involved a previous definition of "customer," *see* n.3, *supra*, and was limited to the circumstances of that case.

Third, defendants rely on *America Atlantic Transmission v. Nice Car, Inc.*, 112 So. 3d 639 (Fla. Dist. Ct. App. 2013). At the time

of the car repairs by AAT, plaintiff Nice Car already had a lien on the car. After the owner failed to pay, the AAT repair shop filed a lien and proposed sale. *Nice Car*, 112 So. 3d at 640. Nice Car posted a cash bond to obtain release of the car. *Id.* at 641. The AAT repair shop refused to release the car and sold it. *Id.* The Florida court held that the lienholder, Nice Car, who is neither the customer nor the vehicle owner, was not entitled to obtain possession of the car by posting a cash bond.[4] *Id.* at 642–43. Defendants point out that *Nice Car*: (1) rejected the proposition that *Sunrise* allows a non-customer to prevail against the interest of a non-compliant repair shop; (2) found that "[h]ad the legislature intended to define 'customer' to include 'any person claiming an interest in or lien on the vehicle,' it would have done so"; and (3) concluded that *Sunrise* was of "no precedential value" because it involved the owner A-Leet, whereas "Nice Car is neither the owner, nor the customer as that term [is] defined in section 559.917." *Nice Car*, 112 So. 3d at 643.

To put a finer point on the issue, reimbursement claims for

---

[4] After *Nice Car*, the lien statute was expanded to allow both customers and a person claiming a lien to obtain release of a vehicle by posting a bond. *Compare* Fla. Stat. § 559.917 (2019) ("Any customer may obtain the release of her or his motor vehicle . . . .") *with* Fla. Stat. § 559.917 ("A customer or a person of record claiming a lien against a motor vehicle may obtain the release of the motor vehicle . . . ."). *Nice Car* is thus superseded by statute. *See Toyano's Auto Repair Servs. v. S. Auto Fin. Co., LLC*, 331 So. 3d 186, 188 n.1 (Fla. Dist. Ct. App. 2021). Defendants submit *Nice Car* is still relevant to show how GEICO misreads *Sunrise*.

windshield repairs under Florida law are somewhat inherently of a *fait accompli* nature as to the insurance company. That is because (1) insurers in Florida cannot require a person with comprehensive coverage to pay a deductible for windshield repairs, Fla. Stat. § 627.7288, and (2) insureds have sole discretion to select the repair shop, at "no cost" to them. After notifying the insurer about windshield damage, insureds can assign their rights to payment for repairs to a repair shop of their choosing in exchange for the shop's performance. Then, acting as the insured's assignee, the repair shop performs the repair and seeks payment directly from the insurer. The remedial nature of the Repair Act—to protect consumer customers from oral estimates and misunderstandings—is arguably not designed to protect insurers, such as GEICO.

## V.    COUNTS 1–7

Even without a statutory cause of action under the Repair Act, GEICO argues Glassco's violations of the Repair Act rendered its invoices non-payable and Glassco's submission of such invoices for payment to GEICO constituted fraudulent and unlawful conduct for which GEICO can recover. As noted earlier, GEICO admits that if Glassco's alleged Repair Act violations do not void the repair transaction, Counts 1 through 7 fail.

### A. District Court's Ruling on Counts 1–7

The district court granted summary judgment on GEICO's remaining claims premised on Repair Act violations, concluding the Act does not have a provision voiding reimbursement invoices from non-compliant repair shops. The district court reasoned that

"the Repair Act contains no provision rendering [non-]payable claims for repair work actually performed by noncompliant repair shops, meaning these claims are not considered unlawful under Florida law." The district court observed that, in contrast, other Florida statutes clearly contain a voiding penalty. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1330 n.26 (S.D. Fla. 2017) (listing Florida statutes that void reimbursement claims submitted by a non-compliant entity). The district court noted that the absence of this kind of provision in the Repair Act is "strong evidence that the Florida legislature did not consider such claims fraudulent or unlawful."

The district court also concluded that the Florida decisions cited by GEICO were not on point. *See, e.g.*, *Osteen v. Morris*, 481 So. 2d 1287 (Fla. Dist. Ct. App. 1986), *Gonzalez v. Tremont Body & Towing, Inc.*, 483 So. 2d 503 (Fla. Dist. Ct. App. 1986), and *Safari Tours, Inc. v. Pasco*, 255 So. 3d 415 (Fla. Dist. Ct. App. 2018). In the district court's view, these Florida decisions were distinguishable because "in each of these decisions, the customer refused to pay for repairs because the repair shop either failed to furnish the written estimate or exceeded the written estimate, and the customer asserted the private right of action under the Repair Act." The district court also found GEICO's other cited cases "similarly unavailing." Thus, in light of the absence of a voiding penalty, the court determined that "[c]laims under the Repair Act for repairs performed by noncompliant repair shops are not fraudulent or unlawful vis-à-vis the insurance company."

## B.  GEICO's Contentions Regarding Counts 1–7

GEICO argues the district court erred in granting defendants' summary judgment motions on Counts 1 through 7. GEICO asserts that any violation of the Repair Act renders Glassco's reimbursement claims for repair work, even if performed, wholly non-compensable.  GEICO contends that Florida courts have held that a repair shop that violates the Repair Act may not collect, even in quantum meruit.  *See Osteen*, 481 So. 2d at 1289–90; *Gonzalez*, 483 So. 2d at 504; *Sunrise*, 547 So. 2d at 268; *Perez-Priego v. Bayside Carburetor & Ignition Corp.*, 633 So. 2d 1190, 1191 (Fla. Dist. Ct. App. 1994); *Safari Tours*, 255 So. 3d at 417; *see also FGAP Inv. Corp. v. A1 Body & Glass of Coral Springs, LLC*, 325 So. 3d 1006, 1008 (Fla. Dist. Ct. App. 2021).  GEICO argues that its status as a non-customer does not alter the analysis or result.

GEICO asserts it does not matter whether the Repair Act includes a statutory voiding penalty because Florida courts have held that non-compliant repair shops cannot recover.  Because defendants' Repair Act violations make their invoices non-payable, GEICO argues Glassco submitted fraudulent and unlawful claims.

## C.  Defendants' Contentions Regarding Counts 1–7

Defendants respond that the district court correctly entered summary judgment in their favor.  Defendants stress that the Repair Act does not contain a voiding penalty "which would disentitle Glassco from receiving **any** compensation for services rendered if Glassco violated any singular provision of the Repair Act."  Rather, defendants point to Fla. Stat. § 559.921(7), which

allows a non-compliant repair shop to recover the reasonable value of its repairs.  Section 559.921(7), defendants argue, evinces the Florida Legislature's "clear intention that the Repair Act not only (1) does **not** provide a voiding penalty for a violation of the Repair Act, but rather, (2) **does** contemplate a *quantum meruit* award to a non-compliant repair shop in an action brought by a customer under the remedies section of the Repair Act."

Defendants further argue that all Florida decisions cited by GEICO involved lawsuits between the customer and the repair shop—*not by an insurer* who paid the repair costs for completed repair work requested by a satisfied customer.  Defendants also contend that GEICO's cited cases do not apply here because: (1) some pre-date § 559.921(7), which allows a repair shop in substantial compliance to recover the reasonable value of its repairs; (2) Glassco has not attempted to enforce a lien against a customer; and (3) Glassco has not refused to return a vehicle to a customer.

Defendants also cite to other Florida decisions that allowed a non-compliant repair shop to recover the reasonable value of its repairs.  *See Lieberman v. Collision Specialists, Inc.*, 526 So. 2d 102 (Fla. Dist. Ct. App. 1987); *KT's Kar Kare, Inc. v. Laing*, 617 So. 2d 325, 326 (Fla. Dist. Ct. App. 1993).  Defendants contend that because Glassco prepared a "zero to the customer" estimate which was signed by each customer, Glassco is entitled to compensation for the repairs it performed. Defendants argue that because the alleged violations were, at most, technical and without costs to the insured

customer, Glassco was in substantial compliance with the Repair Act and not barred from receiving payment on its repair invoices.

Defendants also argue that because the Repair Act does not expressly or impliedly render repair services non-payable when performed by a non-compliant repair shop, a statutory violation of the Repair Act does not render the repair invoices non-payable. Defendants assert that "[b]ecause the Repair Act contains no express or implied voiding penalty, the matter is firmly settled against [GEICO]."

## VI.    QUESTIONS CERTIFIED TO THE SUPREME COURT OF FLORIDA

After careful review, and with the benefit of oral argument, we could find no decision from the Supreme Court of Florida, Florida appellate courts, or this Court answering the issues in this appeal. As the district court here aptly observed, "district courts within the circuit have routinely confronted similar Repair Act claims without binding precedent to apply," and "clarification—sooner rather than later—about the scope of Florida law appears advantageous to all." Moreover, the issues in this appeal will impact thousands of windshield repair claims.

Principles of federalism and comity counsel us not to attempt to divine the answers to these challenging and important questions of Florida statutory law. *See Cassell*, 688 F.3d at 1300. "When there is substantial doubt about the correct answer to a dispositive question of state law, a better option is to certify the question to the state supreme court." *Id.* For the reasons discussed

above, this case falls into that category.  Accordingly, we certify to the Supreme Court of Florida the following questions:

(1)  DOES  FLA.  STAT.  § 559.921(1)  GRANT  AN INSURANCE  COMPANY  A  CAUSE  OF  ACTION  WHEN  A REPAIR SHOP DOES NOT PROVIDE ANY WRITTEN REPAIR ESTIMATE?

(2) DO THE VIOLATIONS HERE UNDER THE REPAIR ACT  VOID  A  REPAIR  INVOICE  FOR  COMPLETED WINDSHIELD REPAIRS AND PRECLUDE A REPAIR SHOP FROM BEING PAID ANY OF ITS INVOICED AMOUNTS BY AN INSURANCE COMPANY?

The phrasing used in these **certified questions** should not restrict  the  Supreme  Court  of  Florida's  consideration  of  the problems posed by this case.  Of course, our statement of any of the questions certified does not "limit the inquiry" of the Supreme Court of Florida or restrict its consideration of the issues that it perceives are raised by the record certified in this case.  *Cassell*, 688 F.3d at 1301 (internal quotation marks omitted).  This extends to the Supreme Court of Florida's restatement of the issues and the manner in which the answers are given.

To assist the Supreme Court of Florida's consideration of this case, the entire record on appeal, including copies of the parties' briefs, shall be transmitted to the Supreme Court of Florida along with this certification.

**QUESTIONS CERTIFIED.**