# Supreme Court of Florida

_____

No. SC2023-1540

_____

**GOVERNMENT EMPLOYEES INSURANCE COMPANY, et al.,**
Appellants,

vs.

**GLASSCO INC., et al.,**
Appellees.

September 25, 2024

MUÑIZ, C.J.

The U.S. Court of Appeals for the Eleventh Circuit has certified two questions about the Florida Motor Vehicle Repair Act, sections 559.901-.9221, Florida Statutes (2016).[1] The Repair Act is a consumer protection law that, among other things, requires auto repair shops to make certain pre- and post-work disclosures to their customers. The certified questions are about the rights of a

---

1. This case involves conduct from 2016 through 2019, during which time there were no relevant changes to the Repair Act. We will speak of the statute in the present tense, even when referring to the 2016-2019 version of the law.

customer's insurer when a repair shop does not make required disclosures to the customer but nonetheless performs repair work and then seeks payment from the insurer. The contending parties in this case are an insurer, GEICO, and a windshield repair shop, Glassco.

The Eleventh Circuit asks:

(1) Does Fla. Stat. § 559.921(1) grant an insurance company a cause of action when a repair shop does not provide any written repair estimate?

(2) Do the violations here under the Repair Act void a repair invoice for completed windshield repairs and preclude a repair shop from being paid any of its invoiced amounts by an insurance company?

We have jurisdiction to answer these questions, which are "determinative of the cause and for which there is no controlling precedent" of this Court. Art. V, § 3(b)(6), Fla. Const. Our answer to both questions is no.

I

A

Originally enacted in 1980, the Repair Act broadly governs dealings between car repair shops and their customers. Ch. 80-139, § 1, Laws of Fla. The statute includes various

- 2 -

disclosure-oriented mandates, many tied to the basic requirement that repair shops offer their customers the option to receive a detailed written estimate before starting work that will cost the customer more than $100. § 559.905, Fla. Stat. The Repair Act also prohibits repair shops from engaging in misrepresentation and fraud. § 559.920, Fla. Stat.

On its face, the Repair Act focuses almost exclusively on the interactions between a repair shop and the person who presents the car for repair. The disclosure provisions of the law are first triggered when "any customer requests a motor vehicle repair shop to perform repair work on a motor vehicle, the cost of which repair work will exceed $100 to the customer." § 559.905(1), Fla. Stat. And the obligations at issue in this case—we detail them later—are all owed to the "customer," a defined term in the statute. It means: "the person who signs the written repair estimate or any other person whom the person who signs the written repair estimate designates on [that form] as a person who may authorize repair work." § 559.903(1), Fla. Stat.[2]

---

2. A 2023 amendment to the Repair Act moved the definition of "customer" to section 559.903(2).

From its inception, the Repair Act has contained a "remedies" section that allows a "customer" who is "injured" by a violation of the statute to sue for "damages" or injunctive relief. § 559.921(1), Fla. Stat. The statute was amended in 1993 to include a requirement that motor vehicle repair shops register with the Department of Agriculture and Consumer Services. § 559.904, Fla. Stat.; ch. 93-219, § 4, Laws of Fla. Since then, the Repair Act has empowered the Department to enforce the statute through both the administrative process and civil lawsuits. The statute authorizes the Department to impose administrative penalties up to $1,000 per violation. §§ 559.921(5)(a), 570.971(1)(a), Fla. Stat. (2016). When the Department brings a civil action to enforce the statute, available remedies include injunctive relief, civil penalties, and "restitution and damages for injured customers." § 559.921(5)(a), Fla. Stat.

The statute mentions insurers only once. Section 559.920(10) says that a repair shop may not substitute used replacement parts for new ones without notice to the vehicle owner's "insurer if the cost of repair is to be paid pursuant to an insurance policy and the identity of the insurer or its claims adjuster is disclosed to the motor vehicle repair shop." In 2023 (after the period at issue in this

- 4 -

case), the Legislature amended the Repair Act to prohibit repair shops from offering a customer compensation "in exchange for making an insurance claim for motor vehicle glass replacement or repair." § 559.920(17), Fla. Stat. (2024); ch. 2023-136, § 2, Laws of Fla.

B

From 2016 to 2019, nearly 1,800 of GEICO's insureds selected Glassco for windshield repair or replacement services (we will use the terms interchangeably). *Gov't Emps. Ins. Co. v. Glassco Inc.*, 85 F.4th 1136, 1138 (11th Cir. 2023). The underlying GEICO policy promised reimbursement at a prevailing competitive price. *Id.* And, because of a mandate in section 627.7288, Florida Statutes (2016), GEICO's comprehensive policies included a no-deductible provision for windshield repairs.

Under its business model, Glassco would present an insured customer a written work order authorizing the windshield work to be performed and saying that the repairs would be at no cost to the insured. Importantly, in the work order, the insured customer would assign to Glassco all rights to insurance payment for the repairs. *Glassco*, 85 F.4th at 1138. (We note that the Legislature

recently amended the insurance code to prohibit the assignment of post-loss auto insurance benefits for auto glass repair. That change applies to policies renewed or issued on or after July 1, 2023, and has no bearing on this case. § 627.7289, Fla. Stat. (2024); ch. 2023-136, § 3, Laws of Florida.)

Glassco's own employees typically did not perform the repairs; the company usually relied on independent contractors. When the work was finished, Glassco would submit invoices seeking payment from GEICO. GEICO paid the claims, but only at a "deeply discounted" rate. *Glassco*, 85 F.4th at 1138.

Litigation ensued. Glassco filed individual collection actions against GEICO in state court to recover the unpaid balance of each invoice. And GEICO responded by suing Glassco in federal court, in part to get back the money it had paid in partial satisfaction of Glassco's bills. Relevant here, one count of GEICO's complaint asserted a direct cause of action against Glassco for the alleged Repair Act violations that we specify later. Another count sought a declaration that, because of those alleged violations, the invoices Glassco submitted to GEICO are void and non-compensable. *Id.* at 1138-40.

On motions to dismiss and for summary judgment, the federal district court ruled in Glassco's favor.  First, it concluded that GEICO does not have a private right of action under the Repair Act because the insurer is not a "customer" for purposes of the statute. *Gov't Emps. Ins. Co. v. Glassco Inc.*, No. 8:19-cv-1950-T-23JSS, 2020 WL 13358054 (M.D. Fla. Apr. 16, 2020).  Second, the district court held that Glassco's "technical" Repair Act violations, even if proven, would not render Glassco's invoices non-compensable vis-à-vis GEICO.  *Gov't Emps. Ins. Co. v. Glassco Inc.*, No. 8:19-cv-1950-KKM-JSS, 2021 WL 4391717 (M.D. Fla. Sept. 4, 2021).

GEICO appealed, and the Eleventh Circuit's certified questions followed.

II

Some preliminary points bear emphasis.

First, GEICO in this case purports to raise its own Repair Act-based claims and defenses, rather than those of its insureds.  As the Eleventh Circuit noted: "GEICO does not argue that the law of subrogation permits it to assert the insured's private right of action under the Repair Act.  At oral argument, GEICO also acknowledged that it does not have any assignment of any customer's potential

claim under the Repair Act." *Glassco*, 85 F.4th at 1143 n.2. Our decision today does not address any potential subrogation claims or arguments that might have been raised under these circumstances.

Second, in the underlying litigation so far, the district court and the Eleventh Circuit have assumed that Glassco violated the Repair Act in the five ways that GEICO has alleged. *Id.* at 1142. For purposes of answering the certified questions, we adopt the same assumption. We need not and do not address Glassco's argument that the Repair Act's written estimate requirement does not apply to Glassco's "no cost to the customer" work orders.

Finally, because the second certified question asks whether "the violations *here* under the Repair Act void a repair invoice for completed windshield repairs," *id.* at 1147 (emphasis added), we note the five specific Repair Act violations at issue: (1) subcontracting repair work without the customer's knowledge or consent, *see* § 559.920(14), Fla. Stat.; (2) failing to provide notice of the customer's option to obtain a written estimate, *see* § 559.905(2), Fla. Stat.; (3) failing to provide the written repair estimate before doing repairs, *see* § 559.905(1), Fla. Stat.; (4) failing to provide invoices upon the completion of repairs, *see* § 559.911, Fla. Stat.;

and (5) failing to include odometer readings on work orders and invoices, *see* §§ 559.911(1), .920(11), Fla. Stat. *Glassco*, 85 F.4th at 1139, 1141.

In its briefing, GEICO accuses Glassco of intentionally designing its business model to generate inflated invoices and then engage in abusive collections litigation. GEICO also maintains that the repairs at issue were neither authorized nor properly performed. We do not consider these allegations, which are outside the scope of the certified questions and inconsistent with the case as it comes to us. *See id.* at 1138 ("Glassco completed the repair work, and this appeal involves no customer complaints.").

A

The answer to the first certified question is no: section 559.921(1) does not "grant an insurance company a cause of action when a repair shop does not provide any written repair estimate." *Id.* at 1147. As we have explained, section 559.921(1) creates a private right of action only for "[a]ny *customer* injured by a violation of [the Repair Act]." (Emphasis added.) And "customer" is a defined term in the statute: "the person who signs the written repair estimate" or that person's written designee. § 559.903(1), Fla. Stat.

GEICO concedes that it is not a "customer" under the statute's definition of the term. That concession essentially dictates the answer to the first certified question. After all, the general rule is that a "statutory definition, when so declared, takes precedence over and controls as against all other definitions." *Greenleaf & Crosby Co. v. Coleman,* 158 So. 421, 427 (Fla. 1934); *see also* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 228 (2012) (a statutory definition is "virtually conclusive").

We need not decide whether this is the "[r]are, but not inconceivable" case in which "a defined meaning can be replaced with another permissible meaning of the word on the basis of other textual indications." Scalia & Garner, *supra,* at 228.[3] To support its asserted entitlement to a private right of action, GEICO does not offer any arguments based on the text and structure of the statute.

---

3. The district court suggested that, if the repair shop does not offer a written estimate, it might be reasonable to interpret the word "customer" to mean the person who "requests a motor vehicle repair shop to perform repair work on a motor vehicle." *Glassco,* 2020 WL 13358054, at *4 (citing section 559.905(1)). Because GEICO would not satisfy this definition of "customer," either, we need not determine whether the district court identified a permissible reading of the statute.

Instead, its arguments sound in policy. GEICO describes a problem—the insurer's exposure to harm from unreasonably expensive claims, exacerbated by the "no deductible" rule for windshield repairs—and urges this Court to fashion an extra-textual remedy tailored to the facts of this case. Pointing to the Repair Act's overarching purpose of preventing repair shop misconduct, GEICO says that our Court faces a choice: improvise a solution by deeming the insurer a "customer" with a private right of action under the Repair Act, or render civil liability under the statute "meaningless" and "effectively impotent."

GEICO exaggerates the stakes. As we have explained, the Repair Act authorizes government enforcement of the statute through administrative proceedings and civil lawsuits. Available remedies include fines, restitution, and damages for "injured customers." § 559.921(5)(a), Fla. Stat. The Repair Act need not go unenforced just because an insurer in these circumstances is not a statutory "customer" with a private right of action.

More fundamentally, GEICO misconceives a court's role in interpreting and applying statutes. A court can look to statutory purpose to illuminate the meaning of the statutory text, but

- 11 -

statutory purpose cannot be invoked to justify ignoring the text—the Legislature's actual work product. GEICO essentially urges us to engage in a form of "imaginative reconstruction—the idea that a court may implement what it is sure the legislature would have done (had it faced the question explicitly) rather than what the legislature actually did." *United States v. Logan*, 453 F.3d 804, 807 (7th Cir. 2006) (Easterbrook, J.). That would exceed our authority. Even assuming GEICO has identified a flaw in the Repair Act, policy-based fixes are for the Legislature.

B

The answer to the second certified question is also no: the Repair Act violations at issue here do not "void a repair invoice for completed windshield repairs and preclude a repair shop from being paid any of its invoiced amounts by an insurance company." *Glassco*, 85 F.4th at 1147-48. The text of the Repair Act neither says nor reasonably implies that a repair shop's violation of the disclosure requirements at issue renders a subsequent repair invoice entirely void. And what the statute *does* say cuts against the availability of that punitive remedy.

Most significant to our conclusion is section 559.921(7). The Legislature added that provision to the Repair Act in 1993, at the same time it imposed the repair shop registration requirement and empowered the Department of Agriculture and Consumer Services to enforce the statute, including through civil lawsuits seeking damages for "injured customers." Ch. 93-219, § 12, Laws of Fla.

Section 559.921(7) says:

> If, in any proceeding brought pursuant to this part, it is determined that the repairs and costs thereof were in fact authorized, orally or in writing, the repairs were completed in a proper manner, and the consumer benefited therefrom, then the enforcing authority may consider such factors in assessing penalties or damages and may award the reasonable value of such repairs.

So, notwithstanding a repair shop's violation of the Repair Act, the Legislature has expressly allowed government enforcement entities to adjust the penalties or damages if repairs were authorized and properly performed. Given section 559.921(7), to read a voiding penalty into the Repair Act would bring disharmony rather than coherence to the statutory scheme.

Our conclusion is also informed by the wording of the Repair Act's private right of action provision, section 559.921(1). It authorizes relief in the form of "damages" for a customer who is

- 13 -

"injured" by a violation of the statute. We need not and do not decide whether a bare disclosure violation causes "injury" for purposes of the statute. Assuming a statutory violation has caused an injury, "the primary basis for an award of damages is *compensation.* That is, the objective is to make the injured party whole to the extent that it is possible to measure his injury in terms of money." *Fisher v. City of Miami,* 172 So. 2d 455, 457 (Fla. 1965). To void a repair shop's invoice after a bare statutory violation would go beyond statutorily authorized "damages" and instead serve as a form of extra-statutory punishment.

GEICO's argument in favor of a voiding penalty hinges almost entirely on the authority of *Osteen v. Morris,* 481 So. 2d 1287 (Fla. 5th DCA 1986), and on subsequent district court of appeal decisions that followed *Osteen*'s reasoning. *See, e.g., Gonzalez v. Tremont Body & Towing, Inc.,* 483 So. 2d 503 (Fla. 3d DCA 1986); *1616 Sunrise Motors, Inc. v. A-Leet Leasing of Fla.,* 547 So. 2d 267 (Fla. 4th DCA 1989); *Perez-Priego v. Bayside Carburetor & Ignition Corp.,* 633 So. 2d 1190 (Fla. 5th DCA 1994); *Safari Tours, Inc. v. Pasco,* 255 So. 3d 415 (Fla. 3d DCA 2018); *FGAP Inv. Corp. v. A1*

*Body & Glass of Coral Springs, LLC*, 325 So. 3d 1006 (Fla. 4th DCA 2021).

The customer in *Osteen* orally authorized work that the repair shop satisfactorily performed, but the repair shop did not give the customer a written estimate or written notice of his statutory right to receive one. 481 So. 2d at 1288. Based on what it inferred to be the Legislature's intent, the *Osteen* court held that the shop's Repair Act violation excused the customer from having to pay for the repairs. The court reasoned: "[I]f the customer is held legally liable when the shop has disregarded the provisions of the statute, the shop could effectively disregard the intention of the legislature as evidenced by the provisions of this act." *Id.* at 1289. Noting that the outcome was unfair to the repair shop, the court added: "In such instances the court must carry out the intent of the legislature and cannot do what the court may feel is justice in the case." *Id.* at 1290.

GEICO now argues that *Osteen* supports a voiding penalty in the circumstances here. The logic of the insurer's position is straightforward: Repair Act violations that would render an invoice void as to the customer should make that same invoice void as to

the customer's insurer. If *Osteen* is sound, GEICO's argument has substantial force.

We need not decide whether *Osteen* was correct at the time it was decided, because subsequent amendments to the Repair Act have rendered that case's reasoning obsolete. In 1986, when the Fifth District Court of Appeal decided *Osteen*, the Repair Act did not include a mechanism for government enforcement through the imposition of administrative and civil fines. Nor did the statute include section 559.921(7) and that provision's express permission for government enforcement authorities to credit repair shops for work authorized and properly performed. The two basic premises underlying the *Osteen* decision—that the Legislature intended a voiding penalty, and that the Repair Act would be ineffective without such a remedy—are no longer valid. And because *Osteen* is not a reliable guide to the Repair Act in its current form, the logic of that case cannot sustain GEICO's position here.

### III

Having answered the certified questions, we return this case to the Eleventh Circuit Court of Appeals.

It is so ordered.

CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit – Case No. 23-11056

John P. Marino, Lindsey R. Trowell, Max Gershenoff, and Yonatan Bernstein of Rivkin Radler LLP, Jacksonville, Florida,

> for Appellants Government Employees Insurance Co., GEICO Indemnity Co., and GEICO General Insurance Co.

Howard J. Levine of Law Office of Howard Levine, Miami Beach, Florida; and Michael V. Laurato, Ocala, Florida,

> for Appellees Glassco Inc., John Bailey, Jason Wilemon, and Andrew Victor

David M. Caldevilla of de la Parte, Gilbert, McNamara & Caldevilla, P.A., Tampa, Florida,

> for Amicus Curiae Automotive Education and Policy Institute