**HALLMARK BUILDERS, INC., a Florida Corporation, Plaintiff-Appellant,**

v.

**GAYLORD BROADCASTING COMPANY, a Delaware Corporation, Defendant-Appellee.**

No. 83–3072.

United States Court of Appeals, Eleventh Circuit.

June 7, 1984.

W. Donald Cox, Tampa, Fla., for plaintiff-appellant.

Gregory G. Jones, Tampa, Fla., for defendant-appellee.

Before FAY, VANCE and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

In this diversity case, we determine whether the district court was correct in holding that Gaylord Broadcasting Company's (Gaylord) television station, WTVT, did not defame appellant, Hallmark Builders (Hallmark), in a broadcast concerning problems in the home building industry. The district court was correct, and we affirm.

On January 26, 1979, on its 6 p.m. and 11 p.m. news, WTVT reported on problems encountered by new home buyers and commented on defects found in houses Hallmark had constructed. WTVT aired the report after receiving information concerning a Federal Trade Commission (FTC) investigation into the home building industry and after receiving a complaint from Richard and Ann Jiosne, purchasers of a Hallmark house. WTVT confirmed the existence of defects in the Jiosne residence and other Hallmark houses before broadcasting the story.

At the time the broadcast was aired, WTVT's reporter knew that Hallmark was a builder with subdivisions in several of Florida's leading counties. He also knew that Hallmark received both FHA and VA financing, had its homes inspected by local building inspectors, and that few complaints had been lodged against Hallmark with consumer affairs offices. In addition, the broadcast made no attempt to compare Hallmark with other area builders, made no mention of whether the complaints had come from a substantial number of Hallmark's purchasers, and made no comment regarding any other builder. On the day of the broadcast, the reporter for WTVT interviewed Hallmark's president and was informed that the defects were minor and would be corrected.

While Hallmark contends the entire broadcast is rife with defamatory statements, it specifically relies on four statements and one camera shot to support its position. The statements and camera shot are:

A Federal Trade Commission official warned ... just this week ... that unless some home builders shape up ... the government will land on them ... hard. // Richard and Ann Jiosne say their $52,000 home in Brandon is a case in point.

New home defects are at the top of the list when it comes to consumer complaints.... And, unless builders nationwide take it upon themselves to construct better quality homes ... the federal government may have to step in with tough regulations to protect new home buyers.

Home owners cry foul.

These were expensive homes with expensive problems.

A camera shot of a hairline masonry crack in one of the homes.

The district court held that Hallmark had failed to prove either that the statements were false or that Gaylord was negligent in broadcasting them. The district court, therefore, granted summary judgment to Gaylord. Hallmark appeals claiming that summary judgment was inappropriate and Gaylord was negligent in broadcasting the report.

Under Florida law, Hallmark, a private corporation, is entitled to recover in a defamation action if Gaylord negligently broadcast either false statements or statements with false implications and the broadcast resulted in actual damage to Hallmark. *Brown v. Tallahassee Democrat, Inc.*, 440 So.2d 588, 589–90 (Fla.App. 1983); *Miami Herald Publishing Company v. Ane*, 423 So.2d 376, 388 (Fla.App. 1982). *See also Wolfson v. Kirk*, 273 So.2d 774 (Fla.App.), *cert. denied*, 279 So.2d 32 (1973).

Where a publication or statement is susceptible to two interpretations, one of which is defamatory, a jury should determine whether the statement is defamatory. *Belli v. Orlando Daily Newspapers, Inc.*, 389 F.2d 579, 583–84 (5th Cir.1967), *cert. denied*, 393 U.S. 825, 89 S.Ct. 88, 21

L.Ed.2d 96 (1968). *See also Church of Scientology of California v. Cazares,* 638 F.2d 1272, 1286 (5th Cir.1981). A trial court, however, is not precluded from finding, as a matter of law, that a publication is not defamatory. *Church of Scientology,* 638 F.2d at 1286. *See also Southard v. Forbes, Inc.,* 588 F.2d 140 (5th Cir.), *cert. denied,* 444 U.S. 832, 100 S.Ct. 62, 62 L.Ed.2d 41 (1979) (summary judgment appropriate on the questions of defamation and actual malice). We must determine, therefore, whether the broadcast was susceptible to a defamatory meaning.

■ Hallmark contends the first two statements listed above are defamatory because they purport to expose Hallmark as the only home builder the government is investigating. Such an interpretation is unreasonable. A reasonable person would interpret the statements as declaring that the government is regulating home builders who construct defective houses; thus, Hallmark will be regulated because it builds defective houses. Moreover, the statements are accurate. The Federal Trade Commission had warned home builders about their practices, and the Jiosnes' and other Hallmark houses contained defects. These two statements are not susceptible to a defamatory interpretation.

■ Hallmark also contends that the words "home owners cry foul," which were flashed onto the screen, were defamatory. It claims the home owners never "cried foul," words that connote deception. Hallmark's contention is frivolous. The evidence reveals that numerous home owners complained about problems they encountered with their Hallmark houses. To characterize these complaints as "cry[ing] foul" is reasonable, i.e., the purchasers complained. Since the statement is true, no reasonable person could interpret it as defamatory in any manner towards Hallmark. "A false statement of fact is the *sine qua non* for recovery in a defamation action." *Byrd v. Hustler Magazine, Inc.,* 433 So.2d 593, 595 (Fla.App.1983).

■ Hallmark also contends that the statement "these were expensive homes with expensive problems" was defamatory.

This statement constitutes the reporter's opinion concerning the cost of repairing the defects contained in the Hallmark houses and, therefore, is protected by the first amendment. *Gertz v. Welch,* 418 U.S. 323, 339–40, 94 S.Ct. 2997, 3006–07, 41 L.Ed.2d 789 (1974).

■ Finally, Hallmark argues that the close-up camera shot of a hairline masonry crack in a Hallmark house made the crack appear larger than it really was and, therefore, was defamatory. Because the close-up accurately represented the appearance of the crack from the distance shown, it represented the truth and was not susceptible to any defamatory meaning.

In examining the broadcast in its totality, we find that the broadcast accurately represented the problems encountered by buyers of Hallmark houses. Since the statements in the broadcast were either true or opinions protected by the first amendment, the district court acted properly in granting summary judgment for Gaylord. It is unnecessary to determine whether Gaylord was negligent in broadcasting this report because the report was not defamatory as a matter of law, and therefore, the issue of negligence is irrelevant.

AFFIRMED.