973 So.2d 1177 (2008)
Richard Keith ALAN II, Appellant,
v.
PALM BEACH NEWSPAPERS, INC., d/b/a The Palm Beach Post, Appellee.
No. 4D06-4617.
District Court of Appeal of Florida, Fourth District.
January 2, 2008.
*1178 Richard Keith Alan II, West Palm Beach, pro se.
L. Martin Reeder, Jr., and C. Bryce Albu of Reeder & Reeder P.A., Jupiter, for appellee.
TUTER, JACK, Associate Judge.
Richard Keith Alan, II, appeals the trial court's final order of summary judgment in favor of Appellant, Palm Beach Newspapers, Inc., d/b/a The Palm Beach Post.
Alan, a practicing attorney, was arrested in 2004 and charged with accessory after the fact to murder, threats or extortion, tampering with a witness, and solicitation to commit perjury. After his acquittal in June 2005 he filed a complaint for libel and defamation against The Palm Beach Post. He alleged the Post published certain defamatory statements in articles relating to his arrest and prosecution.
The facts of the case deserve recitation. According to a probable cause affidavit, Alan was representing Sherly Petit-Frere who was charged with murder. During trial preparation, Alan visited an alleged eyewitness to the murder, Kenneth Taylor. The visit took place while the witness was incarcerated. During the visit Alan allegedly informed the witness that if he kept his mouth shut about Alan's client's involvement in the murder, his client in turn would not implicate the witness's cousin, Rodney Taylor, in the murder. The witness informed his attorney about Alan's visit and the attorney informed the prosecutor in Petit-Frere's case. The prosecutor arranged for detectives to record conversations between the witness and Alan. After a subsequent recorded conversation between the witness and Alan, Alan was arrested and charged with accessory after the fact to murder, threats or extortion, tampering with a witness, and solicitation to commit perjury.
Prior to trial, the State dropped two of the charges and the jury acquitted Alan of the remaining two charges. The Post published several articles about Alan's arrest and trial. As a result of the articles Alan sued the Post for defamation and in his complaint alleged twenty-one published statements were false and defamatory.
The Post derived the information it published from three different sources. The Post's first source of information came from the arrest warrant and probable cause affidavit disclosed at Alan's first court appearance. Alan claims the following published statements from this source were defamatory:
Richard Keith Alan II, 31, was arrested Friday evening for his involvement in the murder case of Simon Sands.
A circuit judge set Alan's bond at $100,000 and ordered house arrest if he is released from jail.
Law enforcement officials got a warrant last week to tape conversations between Alan and the State's witness in Petitfrerd's case who was an inmate at the county jail.
Alan told the witness that if he wouldn't implicate Petitfrere then Petitfrere won't implicate the witnesses' cousin in the murder.
Alan is considered an accessory to murder after the fact because the tape shows that not only was Alan suborning perjury from the cooperating witness, but that Alan knew his client and others had committed the murder.
As to the second source of information, the Post relied again on the probable cause affidavit, which contained excerpts from Alan's taped conversation with the witness. Alan claims the following published statements from this source were defamatory:
Alan, was arrested this year on charges that he tried to talk a witness out of testifying in a murder case against Alan's client.

*1179 Alan's charges stem from the March 2003 murder of Simon Sands, 33, outside the Stonybrook Apartment Complex outside of Riviera Beach.
Two men were suspects in the shootingShirley Petitfrere and Rodney Taylor, a first cousin of Kenneth Taylor.
As his client Petitfrere's trial was looming, Alan paid several visits to Kenneth Taylor, who said he was six feet away from the shooting as a curious onlooker.
Kenneth Taylor told his attorney that Alan had been visiting him, and his attorney contacted prosecutors about a possible breach of ethics or the law.
Prosecutor Jim Martz met with Kenneth Taylor, and detectives later wired him to record a conversation with Alan.
Kenneth Taylor agreed, admittedly in an effort to gain leniency in his own legal problems.
And during that conversation, which is expected to be played in court today, Alan tells Taylor not to talk about what he saw.
He said `if you keep your cousin quiet, I'll keep (Petitfrere) quiet, so that they won't have a case against any of them.'
As to the third source of information the Post relied on evidence and testimony presented during Alan's trial. Alan claims the following published statements from this source were defamatory:
Alan was the victim of an overzealous prosecutor intent on bringing him down.
Alan's case rose out of the complicated murder investigation of Simon Sands who was gunned down in March 2003 outside the Stonybrook Apartment Complex in Riviera Beach.
Two men were suspects in the murderShirley Petitfrere and Rodney Taylor.
Alan was appointed to defend Petitfrere.
Kenneth Taylor told his attorney that Alan had been visiting him, and the attorney contacted prosecutors.
He said `If you keep your cousin quiet, I'll keep Petitfrere quiet so that they won't have a case against any of them.'
Instead Alan argued that he was targeted by Martz after their relationship went sour soon after their first meeting.
Alan argues the above statements were made without reasonable care and did not constitute fair and Accurate reporting of the official proceedings. As a result, Alan alleges he suffered damage* "to his office, occupation, business and or employment as a trial attorney and solo practitioner."
The Post filed an answer and affirmative defenses asserting it did not cause any damages to Alan by publishing the statements listed above and asserting that all of the publications were true, "privileged under Florida common law as fair and accurate reports of a judicial proceeding . . . contents of public records . . . [and] statements of public officials, including law enforcement officials." Moreover, the Post alleged the publications "are privileged under the First Amendment of the United States Constitution and Article I, Section 4 of the Florida Constitution because [Alan] is a public figure and the publications concerned [Alan's] involvement in a public controversy."
In granting the Post's motion for final summary judgment the trial court determined there were no genuine issues of material fact as to the statements and that none of the statements were actionable as a matter of law. The trial court determined all the statements regarding Alan were accurate, fair and impartial reports of court records or court proceedings. Alan argues the trial court applied an incorrect legal standard in deciding the disputed issues. We disagree with Alan and hold the trial court applied the correct *1180 legal standard by considering whether the published statements were "accurate, fair and impartial" reports of court records and court proceedings.
The trial court determined there were no genuine issues of material fact as to whether a qualified privilege existed. A newspaper "has a qualified privilege to report accurately on information received from government officials. The privilege extends to the publication of the contents of official documents, as long as the account is reasonably accurate and fair." Rasmussen v. Collier County Pub. Co., 946 So.2d 567, 570-71 (Fla. 2d DCA 2006). "This statement merely means that the report of judicial proceedings must be correct." Walsh v. Miami Herald Pub. Co., 80 So.2d 669, 671 (Fla.1955).
It is not improper for a trial court to determine whether allegedly defamatory statements are fair, accurate and impartial. See Carson v. News-Journal Corp., 790 So.2d 1120, 1122 (Fla. 5th DCA 2001). In this case, the trial court determined, and the record supports, the published statements were fair, accurate and impartial. The Post obtained the information for the published statements from court documents and court proceedings surrounding Alan's arrest and trial. Some of the published information may have been phrased to catch the Post's readership's attention. With the exception of the statement that the police had obtained a warrant to tape Alan and Taylor's conversation, we find the trial court correctly determined the published statements were "fair, accurate and impartial."
While some of the statements in the Post's articles may be viewed as painting Alan in a negative light, this alone does not rise to actionable defamation. We affirm the trial court's entry of summary judgment.
The Post claims Alan's complaint and appeal is completely frivolous and subject to an award of attorney fees pursuant to section 57.105, Florida Statutes. We disagree and deny the Post's claims for attorney fees.
Affirmed.
STONE and MAY, JJ., concur.