[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-12947

Non-Argument Calendar

_____

THOMAS M. UTTERBACK,

Plaintiff-Appellant,

*versus*

CRAIG B. MORRIS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:23-cv-00279-TKW-MJF

_____

Before BRANCH, LAGOA, and ANDERSON, Circuit Judges.

PER CURIAM:

Thomas M. Utterback, *pro se*, appeals the district court's dismissal with prejudice of his single claim for defamation by implication against Craig B. Morris.

Utterback and Morris have a long history. After serving a federal sentence for money laundering, Utterback moved to Florida in 2003, and began working as the manager of A&J Holdings, LLC. Through a subsidiary, A&J Holdings owned a stake in the Calypso Towers Resort Community Association, Inc., a resort in Panama City Beach. In 2017, the Calypso Association—which was represented by Morris—sued Utterback, A&J Holdings, and several other defendants in a dispute relating to ownership rights in the resort. Although Utterback was later dismissed from that case, Utterback retaliated with his own lawsuit against Morris and the Calypso Association, alleging that they maliciously prosecuted him. While that action was pending, Morris was retained as counsel for another resort community in Panama City Beach. During a meeting with that resort's board, Morris was asked about Utterback's malicious-prosecution suit against him. This prompted Morris to launch into a spirited polemic about Utterback, in which he characterized Utterback as "a convicted felon" who "lost his bar license" and expressed that, as a result, "[t]he only way [Utterback] can practice law is to sue people[,]" and that Utterback "is suing someone right now probably."

That prediction soon came true: On October 23, 2023, Utterback sued Morris, alleging one count of defamation by implication based on Morris's statements at the board meeting. The district court granted Morris's motion to dismiss, concluding that Utterback had failed to state a claim. After careful review, we agree that Utterback has not plausibly alleged a claim for defamation by implication and affirm the district court's order of dismissal.

## I.    BACKGROUND

### A.    Factual Background

Appellant Thomas M. Utterback was once a licensed attorney, practicing law in Missouri. In 1998, Utterback pleaded guilty to one count of unlawful transport and transfer of monetary instruments and funds, in violation of 18 U.S.C. § 1956(a)(2)(B). The money Utterback helped launder was alleged to be proceeds of "the distribution of controlled substances." Utterback received a three-year prison sentence for this offense and surrendered his law license following his conviction. *See* Judgment, *United States v. Utterback*, No. 98-cr-00026 (E.D. Mo. Aug. 7, 1998), ECF No. 42. After completing his sentence, Utterback moved to Bay County, Florida in 2003 and began working as a licensed real-estate agent. He then became the manager of A&J Holdings, LLC, a real-estate firm that owned a 40% stake in a company called Calypso Developer Entities. In turn, Calypso Developer Entities owned "certain property rights" in the Calypso Towers Resort Community Association, Inc. (the "Calypso Association"), a resort community in Panama City Beach.

In 2017, the Calypso Association sued A&J Holdings, Utterback, and several other individuals and entities involved in the Calypso Resort and Towers project for breach of contract and tortious interference, alleging that Utterback induced the developers to breach an option contract. *See* Compl., *Calypso Towers Resort Cmty. Ass'n v. Calypso Grp., LLC*, No. 2017 CA 000784 (Fla. Cir. Ct. filed May 25, 2017) Appellee Craig B. Morris represented the Calypso Association in this litigation. The Calypso Association later dismissed Utterback from the lawsuit and proceeded to trial against several of his co-defendants, including A&J Holdings.

After he was dismissed from that case, Utterback filed a *pro se* lawsuit against the Calypso Association and Morris, alleging that they maliciously prosecuted him and conspired "to file and prosecute the tortious interference with contract action, knowing to a legal certainty that they had no legal basis and were devoid of factual or legal support." *See* Compl. ¶¶ 19–26, *Utterback v. Calypso Towers Resort Cmty. Ass'n*, No. 20001249CA (Fla. Cir. Ct. filed July 2, 2020). On April 24, 2023, the court granted summary judgment for the defendants on Utterback's claims, which the First District Court of Appeal later affirmed. *See Utterback v. Calypso Towers Resort Cmty. Ass'n*, 399 So. 3d 321 (Fla. 1st DCA 2024).

The event at the center of our case took place while Utterback's lawsuit against the Calypso Association and Morris was still pending. On November 11, 2021, Morris gave a presentation to the Board of the Edgewater Beach Resort Community Association, Inc. (the "Edgewater Association"), another resort community in

Panama City Beach. Morris had recently been retained by the Edgewater Association and was there "to introduce himself to Edgewater owners and answer questions [about] himself and his representation of the [Edgewater] Association in litigation."

During the Q&A portion of his presentation, Morris received questions about prior lawsuits he had been involved in, including Utterback's pending suit against him for malicious prosecution. In response, Morris explained that he had "been sued one time for representing a condo association board that filed a lawsuit against a gentleman and that gentleman responded by filing a lawsuit against myself, every member of the Board, and the Association." That "gentleman," of course, was Utterback. Morris's spirited defense of himself continued:

> Why would I tell you the name of the person who sued me? Why would I tell you the name of the person who sued me? Cause I want you to Google him. I want you to Google him. The first thing that will come up is a mug shot. This is a well-known disbarred attorney who can't get his license back because the State of Missouri says he is not . . . to tell the truth and he is a convicted felon. He took money. Millions of dollars. Put them in a suitcase. Allegedly with some drug connection. Took the money. Millions of dollars in a suitcase. Tried to take through an airport down in another country. Got arrested. Got put in jail for a while and lost his bar license. The only way he can practice law is to sue people. He can only represent himself. So, if you deal with him in any way,

shape or form, he is going to sue you and he is going to practice law again. He has sued Hand Arendall, one of the best law firms in Alabama and Florida, he sued myself, he sued my association, he sued Trustmark Bank—have you ever heard of Trustmark Bank? Okay. He is suing someone right now probably. That is the one lawsuit against prior to this lawsuit. That lawsuit will be thrown out of court that I was telling you about with Utterback and this lawsuit right here we've already discussed in enough detail. So please do not repeat things that are not true.

This meeting, including Morris's comments about Utterback, was both livestreamed and "recorded on video" for members of the Edgewater Association to watch at a later time.

### B.    Procedural History

On October 23, 2023, Utterback, proceeding *pro se*, sued Morris in the U.S. District Court for the Northern District of Florida. In his amended complaint—the operative pleading below—Utterback alleged one count of defamation by implication based on Morris's statements to the Edgewater Association. Utterback claims that, "by juxtaposition or omission of facts," Morris's statements had four defamatory implications: that Utterback "was involved in the illegal drug trade," that he "stole money," that his "plea of guilty to a money laundering charge in 1998 negatively affected Utterback's work and involvement in the Calypso Resort or his career in Florida," and that he was a "maliciously litigious person without ethics or honor and poised to harm well-intentioned

persons." That pleading specifically referenced Utterback's 1998 conviction, the Calypso Association's suit against Utterback, Utterback's malicious-prosecution suit against Morris, and another unsuccessful *pro se* suit Utterback filed in 2015 against Trustmark National Bank and Hand Arendall, L.L.C. *See Utterback v. Trustmark Nat'l Bank*, 2017 WL 5654732 (S.D. Miss. Mar. 30, 2017), *aff'd* 716 F. App'x 241 (5th Cir. 2017).

Morris, who also represented himself, moved to dismiss the first amended complaint. The district court referred that motion to a magistrate judge for a report and recommendation (the "Report"). Subsequent to a hearing on Morris's motion, the magistrate judge recommended that the motion to dismiss be granted. In doing so, the magistrate judge relied heavily on the factual background sketched throughout the court filings referenced in the first amended complaint, as well as admissions of law and fact Utterback made during the hearing. Utterback filed a timely objection to the Report, arguing that the magistrate judge erred by "assum[ing] an investigatory posture" at the motion hearing and by rejecting Utterback's defamation-by-implication claim on the merits. In conducting a *de novo* review of the motion to dismiss, the district court rejected Utterback's objection to the propriety of the hearing, explaining:

> The Court did not overlook Plaintiff's argument that the magistrate judge overstepped his role by conducting an "inquisitional hearing" on Defendant's motion to dismiss. However, putting aside the fact that Plaintiff did not file a copy of the hearing transcript for the

> Court to review, the Court sees nothing improper
> about a judge "pressing" the parties on their positions
> at oral argument to help narrow the issues in dispute
> or properly frame the issues for resolution—which is
> what it sounds like the magistrate judge was doing at
> the hearing in this case.

Accordingly, the district court adopted the Report in full, granted Morris's motion to dismiss, and dismissed Utterback's claim with prejudice.

Utterback timely appealed that order. Upon receiving notice of Utterback's appeal, we *sua sponte* recognized that Utterback had not sufficiently pleaded the citizenship of the parties so as to establish federal diversity jurisdiction. Utterback subsequently filed a motion for leave to amend his pleading. We granted that motion and directed Utterback to file his second amended complaint in the district court, allowing the appeal to proceed. Utterback's second amended complaint is identical to his previous pleading, except that it now properly pleads diversity jurisdiction and venue.[1] Morris has not submitted an answer brief on appeal and never moved for an extension of time to do so. Utterback has filed a "motion to decide the appeal on his brief alone," which is also pending before this Court.

---

[1] Recognizing that this jurisdictional flaw has been corrected, we will continue to refer to the first amended complaint in reviewing the issues on appeal, since that was the pleading before the district court. *See Eklund v. Mora*, 410 F.2d 731, 732 (5th Cir. 1969).

## II.    STANDARD OF REVIEW

We review a district court's ruling on a motion to dismiss for failure to state a claim *de novo*, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

## III.    ANALYSIS

Utterback appeals the dismissal of his single claim for defamation by implication. Under Florida law,[2] a private-figure plaintiff states a defamation claim by plausibly alleging that the defendant negligently published a false and defamatory statement that caused the plaintiff actual damages. *See Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008) (citing *Restatement (Second) of Torts* §§ 558B, 580A–580B). "Words are defamatory when they charge a person with an infamous crime or tend to subject one to hatred, distrust, ridicule, contempt or disgrace, or tend to injure one in one's business or profession." *Rubin v. U.S. News & World Rep., Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001). But "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1272 (11th Cir. 2018). "Pure opinions" are "based on facts which are set forth in the publication or which are otherwise known or available to the

---

[2] As a federal court sitting in diversity jurisdiction, we apply state substantive law (here, Florida law) in analyzing state causes of action, including defamation and defamation by implication. *McMahon v. Toto*, 256 F.3d 1120. 1131 (11th Cir. 2001) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

reader or listener as a member of the public," while mixed opinions—which may provide the basis for a defamation claim—are instead based on facts about a party or his conduct that "have not been stated in the publication or assumed to exist by the parties to the communication." *Id.*; *see also Stembridge v. Mintz*, 652 20. 2d 444, 446 (Fla. 3d DCA 1995) (noting an opinion "is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion" (quoting *Restatement (Second) of Torts* § 566)). Moreover, we "have long recognized that a defamation claim may not be actionable when the alleged defamatory statement is based on non-literal assertions of "fact" or "rhetorical hyperbole" that "cannot reasonably be interpreted as stating actual facts about an individual." *Horsley v. Rivera*, 292 F.3d 695, 701 (11th Cir. 2002) (quotation omitted).

Florida also recognizes a claim for defamation by implication, which instead "is 'premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements.'" *Ozyesilpinar v. Reach PLC*, 365 So. 3d 453, 460 (Fla. 3d DCA 2023) (quoting *Jews for Jesus*, 997 So. 2d at 1107). A defendant's statements may be defamatory by implication, despite being true, "if 'the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts.'" *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (quoting *Jews for Jesus*, 997 So. 2d at 1108). Even so, statements are not impliedly defamatory simply because they omit additional facts when such facts do not affect the truth of the statements. *See id.* at 1270–72. In

24-12947              Opinion of the Court                    11

determining whether a statement's implications are defamatory, we must consider the publication "in its totality," *Byrd v. Hustler Mag., Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (citation omitted), and "as the common mind would understand it," *Loeb v. Geronemus*, 66 So. 2d 241, 245 (Fla. 1953). "Whether the defendant's statements constitute defamation by implication is a question law for the court to determine." *Turner*, 879 F.3d at 1269 (first citing *Brown v. Tallahassee Democrat, Inc.*, 440 So. 2d 588, 590 (Fla. 1st DCA 1983); then citing *Hallmark Builders, Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984)).

On appeal, Utterback appears to be challenging the dismissal of his defamation-by-implication claim on three grounds.[3] First, Utterback argues that it was improper for the district court to "approv[e]" the magistrate judge's "independent investigation" into factual matters when reviewing Morris's motion to dismiss. Second, he asserts that the district court erroneously took the truth of the statements about Utterback's criminal history

---

[3] We limit our review on appeal to those issues that are "specifically and clearly identified" in the initial brief. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). All other issues are deemed abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned." (internal citations omitted) (first citing *Lorisme v. I.N.S.*, 129 F.3d 1441, 1444 n.3 (11th Cir. 1997); then citing *Horsley*, 304 F.3d at 1131 n.1)); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (noting an appellant abandons an issue "when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority" (citations omitted)).

as dispositive in finding that any implications of them could not be defamatory as a matter of law.[4]  Third, Utterback says that the district court overlooked Morris's purported "duty, as an attorney, to be truthful, candid, and aboveboard with his client" in concluding that Morris's statements regarding Utterback's litigation history constituted unactionable "pure opinion."  We consider each issue in turn.

**A.**

According to Utterback, the district court improperly ventured beyond the pleadings in reviewing Morris's motion to dismiss by considering "documents from the voluminous dockets of several Florida circuit court and appellate cases, and [Utterback's] 1998 criminal case," as well as Utterback's responses at the motion hearing.  We disagree.

In general, "when considering a motion to dismiss, the district court must limit its consideration to the pleadings and any exhibits attached to it."  *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023) (citing *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)).  "If the parties present, and the court considers, evidence outside the pleadings, the motion to dismiss

---

[4] Because the district court "adopted and incorporated by reference" the magistrate judge's Report, we attribute the reasoning in the Report to the district court.  *See* 15A Chas. A Wright & A.R. Miller, *Federal Practice and Procedure* § 3901.1 (3d ed. 2025) ("[T]he judgment that results from the district court's adoption of the recommendation is the judgment of the district court.").  We refer to the "district court" when addressing Utterback's challenges to the Report.

generally must be converted into a motion for summary judg-ment[,]" which may be done only upon notice to the parties. *Id.* (first citing Fed. R. Civ. P. 12(d); then citing *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984)). As an exception to this rule, courts may take judicial notice of "a fact that is not subject to reasonable dis-pute because it" is either "generally known with-in the trial court's territorial jurisdiction" or "can be accurately and readily deter-mined from sources whose accuracy cannot reasonably be ques-tioned." Fed. R. Evid. 201(b); *see also Baker*, 67 F.4th 1268 at 1276 (noting this exception "permit[s] district courts to consider materi-als outside a complaint at the motion-to-dismiss stage . . . without converting the motion into one for summary judgment"). Public records, including filings in other judicial proceedings, are gener-ally subject to judicial notice for purposes other than establishing the "truth of the matters asserted in the other litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (quotation omit-ted); *see also In re Delta Res., Inc.*, 54 F.3d 722, 726 (11th Cir. 1995) ("[T]his Court may take judicial 'notice of another court's order . . . for the limited purpose of recognizing the "judicial act" that the order represents or the subject matter of the litigation and related filings.'" (quoting *Jones*, 29 F.3d at 1553–54)).

Here, the district court's reliance on court filings outside the pleadings did not go beyond the appropriate scope of judicial no-tice. The district court primarily referenced the parties' prior his-tory of litigation to set the factual backdrop leading up to Morris's statements—that is, "to establish the fact of such litigation and re-lated filings." *Jones*, 29 F.3d at 1553. The district court also

acknowledged previous court filings when reviewing the merits of the allegations that Morris's statements implied Utterback was "involved in the illegal drug trade" and "litigious." Doing so was not improper.

In rejecting Utterback's allegation that Morris's statement could reasonably be understood to imply Utterback was "involved in the illegal drug trade," the district court partially relied on the judicially noticed fact that the indictment in Utterback's 1998 criminal case alleged "that the money [Utterback] transported was derived from 'the distribution of controlled substances.'" That Utterback committed that offense, though, is established by Utterback's own allegation that he entered a "plea of guilty to a money laundering charge in 1998," which we must take as true. Because the "truth of the matters asserted in the other litigation"—that is, Utterback's conviction for the charged offense—is clear on the face of the first amended complaint, the district court made no error in referencing the indictment to see what "averments were made" in the charge to which Utterback tells us he later pleaded guilty. *Jones*, 29 F.3d at 1553 (citation omitted); *see also United States v. Oliver*, 962 F.3d 1311, 1320 & n.7 (11th Cir. 2020) (taking judicial notice of criminal indictment where its contents were not in dispute). Similarly, the district court's reliance on Utterback's prior litigation in *Calypso Towers*, *Utterback*, and *Trustmark*—each of which is cited and referenced in the amended complaint—in considering whether Morris defamatorily implied that Utterback is "litigious" is limited to showing "the fact of such litigation" having occurred, falling squarely within the bounds of judicial notice. *Jones*, 29 F.3d at 1553.

More broadly, Utterback characterizes the magistrate judge's motion hearing as an "interrogation" that "under[took] an independent mission of finding facts outside the record." Utterback, however, has not provided us with a transcript of that hearing. We are thus unable to review Utterback's arguments as to the propriety of that hearing and have no choice but to reject them outright. *See Selman v. Cobb Cnty. Sch. Dist.*, 499 F.3d 1320, 1333 (11th Cir. 2006) ("[T]he burden is on the appellant to ensure the record on appeal is complete, and where a failure to discharge that burden prevents us from reviewing the district court's decision we ordinarily will affirm the judgment." (first citing *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002); then citing *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 758 (11th Cir. 1985); and then citing *Green v. Aetna Ins. Co.*, 397 F.2d 614, 615 n.5, 618–19 (5th Cir. 1968))); *Abood v. Block*, 752 F.2d 548, 550 (11th Cir. 1985) ("In this case dismissal is not only warranted but mandated since here there is no way this Court can review the action taken by the district court absent a transcript of the proceedings and the findings and conclusions of the trial court."); *accord* Fed. R. App. P. 10(b)(2).

## B.

Next, Utterback argues that the district court erred in finding the statements as to Utterback's criminal history were not defamatory based on Morris's "bare-bone[s] accusation that [Utterback] had committed a criminal act was true." A statement (or any implication thereof) cannot be defamatory "if the 'gist' or the 'sting' of the statement is true." *Smith v. Cuban Am Nat'l Found.*, 731 So. 2d 702, 706 (Fla. 3d DCA 1999) (collecting cases). Generally,

truth is asserted as an affirmative defense, and thus is not considered at the motion-to-dismiss stage. *See Scott v. Busch*, 907 So. 2d 662, 666–67 (Fla. 5th DCA 2005); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 706–07 (11th Cir. 2016). But because falsity is an element of defamation, a plaintiff nonetheless fails to state a claim if the allegedly defamatory statement, read against "the allegations of the . . . complaint and the attachments thereto, accept[ed] . . . as true, and [viewed] in the light most favorable to [the plaintiff]," remains "substantially true." *Marshall v. Amerisys, Inc.*, 943 So. 2d 276, 279–80 (Fla. 3d DCA 2006); *cf. Veritas v. Cable News Network*, 121 F.4th 1267, 1276 n.15 (11th Cir. 2024) ("We may consider the issue of substantial truth as an absolute defense at the motion-to-dismiss stage because 'a plaintiff in New York courts generally must identify how the defendant's statement was false to survive a motion to dismiss.'" (quoting *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 245, 247 (2d Cir. 2017))).

Here, the district court concluded that Utterback failed to state a claim for implied defamation based on Morris's statement that Utterback "took money . . . allegedly with some drug connections" for several reasons. One of those reasons was that the allegedly defamatory implication of that statement—that Utterback "was involved in the illegal drug trade"—is substantially true.[5] As

---

[5] The district court rejected this theory of implied defamation on the alternative ground that the grammatical tense, context, and qualified language of Morris's statement demonstrated that a reasonable person would not understand Morris to have implied that Utterback "personally was connected to drugs, except to the extent he laundered money that was connected to drugs."

24-12947            Opinion of the Court            17

noted above, Utterback's complaint acknowledges that he was con-
victed of money laundering in 1998, a charge allegedly tied to
money derived from "the distribution of controlled substances."
Even when viewed in the light most favorable to Utterback, such
information demonstrates that the "gist" of the implication that
Utterback was at least *involved* in the illegal drug trade is substan-
tially true.  *Smith*, 731 So. 2d at 706; *see also Nix v. ESPN, Inc.*, 772 F.
App'x 807, 814 (11th Cir. 2019) ("A statement 'is not considered false
unless it would have a different effect on the mind of the reader
from that which the pleaded truth would have produced.'" (inter-
nal quotation marks omitted) (quoting *Masson v. New Yorker Mag.,
Inc.*, 501 U.S. 496, 517 (1991))).  Therefore, the district court made
no error in concluding that Utterback could not plausibly establish
the falsity of that implication.

---

The district court also looked to the statement's tense and context in holding
that Utterback could not base his claim on the allegedly defamatory implica-
tions that his guilty plea "negatively affected [his] work and involvement in
the Calypso resort" or that he "had stolen the money he laundered."  Utter-
back only responds to these reasons for dismissal in passing, asserting that
while "the District Court's dismissal with prejudice relies heavily on syntax,
grammar, past and present test, [and] parsing the meaning of words and
phrases, . . . a Bay County jury will decide in Appellant's favor particularly
after Appellee testifies under oath."  Because Utterback does not adequately
address the "merits of the district court's alternative holdings" beyond mere
"conclusory assertions," he has "abandoned any argument [he] may have had
that the district court erred in its alternative holdings," allowing us to affirm
the district court's rejection of these allegedly defamatory implications on
those grounds as well.  *Sapuppo*, 739 F.3d at 682–83.

## C.

The last issue Utterback presents asks "[w]hether an attorney bears a responsibility to be honest, candid, and fair in communications with his client about his/her experience in past cases." To the extent Utterback asks us to issue an advisory opinion on the ethical contours of the attorney-client relationship, we decline his invitation to do so. *See, e.g.*, *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) ("It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" (first quoting *Mills v. Green*, 159 U.S. 651, 653 (1895); then citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); and then citing *North Carolina v. Rice*, 404 U.S. 244, 246 (1971))). It appears from the context of his briefing, though, that Utterback may be arguing that Morris's purported lack of candor suggests "a defamatory implication by omitting facts" relevant to his opinion of Utterback. *Johnston*, 36 F.4th at 1275. Even if we were to give Utterback the benefit of that liberal construction of the issue,[6] this argument still fails.

The district court found that Utterback could not state a claim based on the alleged implication that he is "litigious" because

---

[6] We generally "read briefs filed by *pro se* litigants liberally." *Timson*, 518 F.3d at 874 (citing *Lorisme*, 129 F.3d at 1444 n.3). But if a *pro se* litigant happens to be "a licensed attorney," "[w]e cannot accord him the advantage of the liberal construction . . . normally given [to] *pro se* litigants." *Olivares v. Martin*, 555 F.2d 1192, 1194 (5th Cir. 1977) (emphasis added) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). While no binding precedent addresses whether that

24-12947                Opinion of the Court                19

that is a "pure opinion."[7]  As explained above, an "opinion based on facts which are set forth in the [statement] or which are otherwise known or available to the . . . listener as a member of the public" is a "pure opinion," which cannot form the basis of a defamation claim.  *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981).  Rather, an opinion is actionable in defamation "only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."  *Stembridge*, 652 So. 2d at 446 (quotation omitted).

Utterback faults Morris for apparently failing to "explain anything about [the] failed lawsuit against [Utterback]" in *Calypso Towers* or Utterback's malicious-prosecution action.  But the amended complaint expressly alleges that Morris told his audience that he had "been sued . . . for representing a condo association board that filed a lawsuit against [Utterback] and [Utterback] responded by filing a lawsuit against [Morris], every member of the Board, and the Association."  When, as here, the speaker "presents the facts at the same time he . . . offers independent commentary,

exception also reaches *former* attorneys like Utterback, at least two unpublished opinions of this Court have found that former attorneys should not receive the usual *pro se* accommodations.  *See Davis v. Nahmais*, 2022 WL 5128153, at *1–2 & n.3 (11th Cir. Oct. 5, 2022); *Santos v. Comm'r*, 731 F. App'x 848, 855 (11th Cir. 2018).  Because Utterback's argument fails regardless of the construction, we need not resolve this issue here.

[7] The district court also rejected this theory for the "independent reason" that "the gist of the implication of [Morris's] statement about [Utterback's] litigation activity is true."  Again, Utterback's failure to respond to this alternative holding suffices to affirm that conclusion.  *Sapuppo*, 739 F.3d at 682–83.

a finding of pure opinion will usually result." *Zambrano v. Devanesan*, 484 So. 2d 603, 606 (Fla. 4th DCA 1986) (citations omitted). Moreover, defamation law does not require Morris to first declare and disclose Utterback's "subjective assertion" as to the merits of those cases before giving his own opinion, *see Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21–22 (1990) (quotation omitted); *see also Turner*, 879 F.3d at 1271 ("Publishers have no legal obligation to present a balanced view of what led up to the publicized event." (alterations adopted) (quotation omitted)), especially since the facts underlying Morris's opinion were readily "available to . . . the public" in the relevant court dockets. *From*, 400 So. 2d at 57; *see also Hoon v. Pate Constr. Co., Inc.*, 607 So. 2d 423, 429 (Fla. 4th DCA 1992) ("[E]ven if people could have reasonable differences of opinion [based on available facts], [such] opinions cannot be defamatory."); But*ton v. McCawley*, 2025 WL 50431, at *6 (S.D. Fla. Jan. 8, 2025) ("[A statement based on facts set forth in the . . . publicly available counterclaims . . . [regarding the speaker's] subjective assessment of the merits of the counterclaims . . . is pure opinion and is not actionable as a matter of law." (internal quotation omitted)).[8]  Thus, the district court also did not err in holding Utterback could not base his claim on Morris's alleged insinuation that Utterback is "litigious."

---

[8] Upon investigation, the public would find that Utterback lost both lawsuits that Morris referenced in his statement. *See Utterback*, 399 So. 3d at 321; *Trustmark*, 716 F. App'x at 241; *cf. Soni v. Wespiser*, 239 F. Supp. 3d 373, 389 (D. Mass. 2017) (considering success of plaintiff's prior lawsuits in determining whether opinion "implie[d] a false assertion of fact" that plaintiff was "litigious" (quotation omitted)).

## IV.   CONCLUSION

For the reasons stated, we affirm the district court's order of dismissal, and we deny as moot the Appellant's "motion to decide the appeal on his brief alone."

**AFFIRMED.**